STATE ex rel. H. R. SPENCER, Mayor, &c., vs. J. D. ENSIGN, District Judge, et al.

Argued Oct. 30, 1893.   Affirmed Nov. 14, 1893.

No. 8402.

Powers of the District Court as to assessments for Parks in Duluth under Sp. Laws.

Under Sp. Laws 1891, ch. 54, providing for a system of public grounds for the city of Duluth, and the charter of that city, (Sp. Laws 1887, ch. 2, subch. 5, § 10, as amended by Sp. Laws 1889, ch. 19, § 8,) regulating assessments for local improvements, upon the assessments coming before the District Court for confirmation, the court is not limited to considering whether the board of public works exercised their judgment, and whether there was fraud or demonstrable mistake of fact in the assessment, but it reviews, corrects, and revises the assessment.

The action of the District Court was valid.

State v. District Court, 33 Minn. 235, followed, to the effect that the provisions in the acts for confirmation by the District Court are valid.

An order to reassess ought to specify the defects in the old assessment.

When, in such case, the court orders a reassessment, the order ought to specify the defects in the assessment, so as to be a guide to the board of public works.

A writ of Certiorari was issued August 30, 1893, by this Court on the relation of Herbert R. Spencer, Acting Mayor of the City of Duluth to *Josiah D. Ensign,* one of the Judges of the District Court of St. Louis County, and to Henry Truelson, James Farrell and Nils Nelson, composing the Board of Public Works of the City of Duluth, requiring them to certify and return to this Court on or before October 3, 1893, the record and proceedings in an assessment of $28,870.95 made upon certain real estate in that City, said to be specially benefitted by the acquirement of certain other adjacent real estate for park purposes. On September 30, 1893, the said Judge and said Board made return to said writ, setting forth the report of the Board of Park Commissioners of the City of Duluth, upon which the assessment was based, the resolution of the Board of Public Works, notice of assessment, proof of its publication, the Assessment Roll made by said Board, notice of application for confirmation and proof of publication thereof, objections of the owners of lots assessed, the evidence taken and received by the Judge of the District Court of said county on the hearing of the application for confirmation of the assessment, the order of the Court made upon such application refusing to confirm the assessment and an order of that Court refusing to make the previous order more definite and certain and certifying that the same constituted a full and complete transcript of all the proceedings, documents, papers, evidence and files in the matter of such assessment.

*H. F. Greene* and *Henry S. Mahon,* for the relator.

The District Court is not invested with jurisdiction to inquire into the determination of the Board of Public Works as to the specific tracts, lots and parcels of land specially benefitted by the acquisition of lands for a park, or into the amount of such special benefits, or to make a new determination of those facts, or a new assessment. The Legislature can only invest the corporate authorities or a board or tribunal representing the city, such as the Board of Public Works, with the power to determine the amount of the special benefits, if any, and the specific property benefitted by the improvement, and to make an assessment thereon. *Rogers* v. *City of St. Paul,* 22 Minn. 494; *State ex rel.* v. *District Court,* 33 Minn. 235.

The power to make assessments for local improvements cannot be vested by the Legislature in any subordinate tribunal or agency, be it a court or otherwise, which is not fully and fairly representative of the municipality, or which has not been voluntarily adopted for the purpose, by the people of the municipality. *People* v. *Mayor of Chicago*, 51 Ill. 17; *People ex rel.* v. *Salomon*, 51 Ill. 37; *Harward* v. *St. Clair, M. L. & D. Co.*, 51 Ill. 130; *Wetherell* v. *Devine*, 116 Ill. 631; *Cornell* v. *People ex rel.*, 107 Ill. 372; *People ex rel.* v. *Common Council of Detroit*, 28 Mich. 228; *State ex rel.* v. *District Court*, 33 Minn. 235; *Hardenburgh* v. *Kidd*, 10 Cal. 402.

Upon application for confirmation of the assessment the jurisdiction of the Court is limited to reviewing the assessment proper, that is the apportionment of the amount of the benefit among the lots benefitted. It cannot go beyond this and review the determination of the amount and extent of the special benefit. A Court, in reviewing an assessment, cannot review political action, such, for instance, as the determination of the limits of the assessment district. *In re Livingston Street*, 18 Wend. 556.

The order of the Court was not justified by the evidence. On application for confirmation of an assessment the District Court cannot refuse to confirm and cannot order a new assessment, unless it clearly appears that the Board of Public Works has failed to exercise its judgment, or that the assessment has been made under the influence of fraud or demonstrable mistake of fact. *State ex rel.* v. *Judges of the Eleventh Judicial District*, 51 Minn. 539; *Rogers* v. *City of St. Paul*, 22 Minn. 494; *Carpenter* v. *City of St. Paul*, 23 Minn. 232; *State* v. *Board of Public Works*, 27 Minn. 442; *State* v. *District Court*, 29 Minn. 62; *State* v. *District Court*, 32 Minn. 181; *State* v. *District Court*, 33 Minn. 164.

If the District Court is to be allowed to usurp such powers as have been exercised by it in this case, it will result in allowing the arbitrary will of the Court and not the will of the people, to govern in almost all matters of local improvement.

*Billson & Congdon*, for the respondents.

On application of the City of Duluth to the District Court for the confirmation of an assessment for special benefits resulting from

the acquisition of property for park purposes, such Court has jurisdiction to determine that the property so assessed, or any part of it, receives no special benefit from such improvement, or that if it does receive such special benefit, it is less than the amount for which such property is assessed. We concede at the outset that no such jurisdiction exists unless it is conferred by statute, but claim that it is so conferred. Sp. Laws 1891, ch. 54, § 8; Sp. Laws 1887, ch. 2, subch. 5, §§ 7, 8, 9, 10; Sp. Laws 1889, ch. 19, § 8; *State ex rel.* v. *District Court*, 33 Minn. 235.

That portion of the Duluth Charter authorizing the District Court, on confirmation of an assessment for local improvements, to pass upon the question of the amount of special benefit received by a given tract, from such local improvement is constitutional. It does not contravene Const. Art. 9, § 1.

The Constitution does not preclude the Legislature from authorizing the municipality to use the machinery of the Courts in settling any disputed question of fact that may arise between the municipality and property owners in such proceeding. An examination of the Duluth Charter discloses that the desirability of this improvement was first passed upon by the Board of Park Commissioners. They thereupon recommended it to the Common Council, who, after examination, approved it. The Board of Park Commissioners thereupon proceeded to acquire title to the land, and thereupon reported such acquisition to the Board of Public Works, whose duty it then became to assess and collect the cost of the improvement, or a part of it. Every step in the procedure was, and still is, under the immediate control of the authorized representatives of the city. The Court did not and could not order the improvement, nor institute assessment proceedings, nor control them when instituted, and any statute attempting to give it this power, would be unconstitutional.

The levy and collection of a tax is an administrative function, and therefore it is not necessary for the Legislature to refer to the Court any question that might arise in the collection of the same, yet the Legislature has the power to refer to a Court any such question which is not essentially legislative or administrative in its character. Of the latter kind are the questions whether it is proper to order an improvement, and what class of property shall

bear the cost of such improvement.    These questions a Court cannot decide, but whether a given tract belongs to the class of lands which the Legislature has said must bear the cost of improvement is peculiarly a judicial question and can be referred to the decision of a Court, if the Legislature so elects, and in so doing, the Legislature in no sense deprives the municipality of the control of its own affairs, or its people of local self-government.

The order of the Court was justified by the evidence.    In this class of cases the well settled rule in regard to ordinary findings of fact in cases tried by the Court without a jury applies.    *State* v. *Ensign*, 54 Minn. 372.

GILFILLAN, C. J.    Sp. Laws 1889, ch. 401, created a corporation styled the "Board of Park Commissioners of the City of Duluth," vesting it with power to establish a system of public parks and parkways for that city.    Sp. Laws 1891, ch. 54, amended that act so as to establish a department of the government of that city named the "Board of Park Commissioners of the City of Duluth," consisting of five commissioners, of whom the mayor of the city is to be *ex officio* one, the others to be appointed by him, with the advice and consent of the Judges of the District Court for the county of St. Louis residing in that city; vacancies to be filled in the same manner.    The board is authorized to acquire by purchase, or under the right of eminent domain, for and in the name of the city, lands for parks or parkways.    By section 8 of the act the city is authorized to cause special assessments to be levied for special benefits derived from the appropriation of any property in any manner for park or parkway purposes in this way: Upon acquiring property for such purpose, the board of park commissioners shall report to the board of public works of the city, the location and cost thereof, and it shall thereupon be the duty of the board of public works "to determine the specific lots, tracts and parcels of land, if any, specially benefited, and the amount of such special benefit, beyond the general benefit to all real estate in said city, derived from such acquirement for parks and parkway purposes, and to assess such specially benefitted property therefor. Said lots, tracts and parcels of land so determined and assessed shall be deemed and held to be all the lots, tracts and parcels of

land specially benefited by such acquirement. And all such assessments shall be levied, confirmed and collected and shall be a lien upon the property assessed in like manner as is prescribed by law for other assessments for local improvements, under the supervision of said board of public works."

The provisions of the charter in reference to confirming other assessments for local improvements made by the board of public works are in Sp. Laws 1887, ch. 2, subch. 5, § 10, as amended by Sp. Laws 1889, ch. 19, § 8. It is therein required that the board of public works shall, after having completed an assessment, give notice of an application to the District Court, or a Judge thereof at chambers, for an order confirming the assessment. Parties interested are given the right to appear and make objections to the assessment, "and it shall be the duty of said District Judge to hear any objections that may be offered to the same by parties interested. * * * Said Judge or Court shall have power to revise, correct, amend or confirm said assessment in whole or in part, and to make or order a new assessment in whole or in part, and the same revised or confirmed on like notice. All persons may appear before said judge or court, either in person or by attorney when such application shall be made, and may object to said assessment either in whole or in part."

September 8, 1891, the board of park commissioners having acquired lands for a park at a cost of $50,607.42, reported the same to the board of public works. That board determined what lots, tracts, and parcels were especially benefited; that they were specially benefited over and above the general benefit to all real estate in the city to the amount of $28,870.95; and thereupon, after notice, assessed the benefits to each of such lots, tracts, or parcels, and gave notice of an application to the District Court for an order confirming the assessment. Several owners filed objections, specifying the lots on behalf of which they objected, and objecting on the ground that the lots were not specially benefited, and that the assessment, as made, was not equal and uniform.

After a hearing, the court found certain facts, to wit: "*First*, that certain of the property in the vicinity of the land acquired for park purposes, and included in said assessment, is specially benefited by the acquisition thereof; *Second*, that such specific

benefits do not amount to the sum assessed by said board, and that said assessment is excessive; *Third,* that the special benefits arising out of the acquisition of said lands do not extend over a portion of the territory specified in said assessment roll."

And thereupon the court made this order: "That said assessment be not and the same is not confirmed; and it is further ordered and adjudged that said board of public works make a new assessment in whole of the special benefits arising out of the acquisition of said property for park purposes."

The board of public works thereupon applied to have the findings made more certain and definite, so as to show what lots are deemed by the court to be specially benefited and those not benefited, and the specific lots wherein the assessment is deemed excessive. This application was denied; and by *certiorari* on the relation of the mayor of the city the proceedings are brought to this court.

The relator claims that, under the acts from which we have quoted, the determination of the board of public works as to the specific lots, tracts, and parcels of land specially benefited, and the amount of such benefit to each, is conclusive. If this were so, it would leave for the District Court to determine only whether the board had exercised its judgment, and whether there has been, in the assessment, fraud or demonstrable mistake of fact,—questions to which this court, in decisions upon cases arising under other city charters, (notably that of St. Paul,) has confined the District Court in applications for judgment upon completed and confirmed assessments. But it is impossible to construe section 10 of this charter, as amended, so as to confine the power of the District Court within the narrow limits claimed for it. The power conferred, (not found in any charter upon which the decisions we have referred to were made,) "to revise, correct, amend, or confirm said assessment in whole or in part, and to make or order a new assessment in whole or in part," is power to review, for the purpose of correcting, or annulling and remitting to the board, the entire work of the board as expressed in the assessment, and necessarily implies power in the court to inform itself, by taking evidence, whether the assessment is just and proper. If this power were merely political, administrative, or ministerial, there might be some ground for arguing that vesting it in the court is obnoxious to constitutional ob-

jections, because giving power to levy taxes for local improvements, upon property within a municipality, to an agency entirely independent of the municipal government, and because requiring of the judiciary the exercise of functions belonging wholly to some other department of the government. Whether a local improvement shall be made, and whether the cost shall be borne by the entire city, or by the property specially benefited, is a question in its nature political, and in no sense judicial, just as is the question whether private property shall be taken for public use. But the legislature may commit to the courts, as a quasi judicial function, the power to determine what is just compensation for taking private property for public use, and, when the burden of a local improvement is imposed upon particular property, (as upon property specially benefited,) we think it may be committed to the court to determine as a quasi judicial question whether the assessing officers have correctly determined the facts upon which the assessment is made.

Both questions, however,—that of the extent of power conferred on the court, and that of the constitutionality of the act,—are fully disposed of by *State ex rel.* v. *District Court,* 33 Minn. 235, (22 N. W. Rep. 625,) in which the court construed, and held to be valid, an act very similar in terms to that we are considering.

The relator also claims that the court has no power to review the determination of the board as to the particular lots benefited, nor as to the aggregate amount of benefit; but that, the board having determined what lots are specially benefited, and what the aggregate of all the benefits is, the court, on application to confirm, can only review the apportionment of that aggregate to the respective lots.

The act does not contemplate that any lot shall be assessed, except it be specially benefited, and only to the extent that it is so benefited. Ascertaining what lots are benefited is as much a part of the assessment as determining how much each lot is benefited, and the aggregate is to be ascertained by adding together the benefits to the respective lots. The power to "revise, correct, amend, or confirm said assessment in whole or in part, and to make or order a new assessment in whole or in part," covers the whole matter.

The relator also makes the point that the order of the court is not justified by the evidence. This is made upon the proposition that the only facts as to which the court could inquire, and on which it could base such an order, are that the board failed to exercise its judgment in making the assessment, or that there intervened fraud or demonstrable mistake of fact, and that there is no evidence of such facts. As we have already stated, the inquiry by the court is not confined to those facts, but its work is a review, and, where necessary, a correction and revision, of the work done by the board.

The relator seems to insist that it was improper for the court to take the opinions of witnesses (experts) upon the questions of benefits to particular lots. As the "benefits" are to be found and stated in dollars and cents, the word can mean nothing more than enhancement in value. The value of real estate is always more or less a matter of opinion, and it would generally be impossible to prove the value except by opinions. In this case they were admissible.

No objection is made to the order on the ground of its being indefinite, but we deem it proper to say that in such a case an order sending the matter back for reassessment ought to specify particularly the defects in the assessment not confirmed, so as to guide the board in making the new assessment.

Order affirmed.

(Opinion published 56 N. W. Rep. 1006.)

Application for reargument denied November 23, 1893.